**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

| | |
|---|---|
| PAOLA CANAS, LINA POSADA, and KEELEY HAZELL,<br><br>Plaintiffs,<br><br>- against -<br><br>BABE'S SOUTH, INC. d/b/a BABE'S SHOW CLUB,<br><br>Defendant. | Civil Action No. _____<br><br><br>**COMPLAINT**<br>(Jury Trial Demanded) |

**COMPLAINT**

COME NOW Plaintiffs, PAOLA CANAS, LINA POSADA, and KEELEY HAZELL (collectively, "Plaintiffs" or "Models"), by and through undersigned counsel, and for their Complaint against Defendant, BABE'S SOUTH, INC. doing business as BABE'S SHOW CLUB (hereinafter "Defendant" or "Babe's"), state as follows:

**INTRODUCTION**

1. Defendant has pirated the images, likeness and/or identity of each Plaintiff Model for purely self-serving commercial purposes – to advertise, promote and market Defendant's own business interests on a social media account owned, operated, hosted, or controlled by Defendant.

2. At all times relevant to this action, Plaintiffs were and are the exclusive owners of all rights, title, and interest to their images, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

3.     Defendant did not negotiate for or purchase the images.

4.     Defendant did not seek or obtain consent or authority to use Plaintiffs' images for any purpose.

5.     Plaintiffs did not agree, nor would Plaintiffs ever agree, to Defendant's use of their images, likeness and/or identity.

6.     Had Plaintiffs been afforded the opportunity to consider whether to consent and release rights as to the use of their images, Plaintiffs would have promptly and unequivocally declined.

7.     Defendant's conduct is therefore misleading and deceptive by falsely representing that Plaintiffs are somehow affiliated with Defendant, have contracted to perform at and/or participate in events at Defendant's strip club, have been hired to promote, advertise, market or endorse the events and other activities offered at Defendant's strip club, and/or that Plaintiffs have attended or will attend each event and have participated in or intend to participate in the activities advertised.

8.     Defendant's conduct is also injurious to Plaintiffs.

9.     Defendant circumvented the typical arms-length negotiation process entirely and pirated the subject images. In doing so, **Defendant has utterly deprived Plaintiffs the right and ability to say "no."**

10.     Defendant has prevented Plaintiffs from engaging in arms-length negotiations regarding the terms and conditions of use of Plaintiffs' images, including the term of any release, remuneration per use, or the ability to decline

the business opportunity entirely. In short, Defendant deprived Plaintiffs of the ability to protect their image, likeness, brand and reputation.

11.    In the end, Defendant gained an economic windfall by using the images of professional and successful models for Defendant's own commercial purposes, luring and enticing patrons worldwide to view the images and visit Defendant's strip club, without having to compensate Plaintiffs a single penny for such usage. Plaintiffs, however, sustained injury to their images, brand and marketability by shear affiliation with Defendant's strip club.

12.    Having operated a business in the entertainment industry, Defendant is well aware of the standard negotiation process over the terms of use, conditions of release, licensing issues, and other contractual incidences related to use and exploitation of images for Defendant's commercial benefit.

## PARTIES

### A.  Plaintiffs

13.    Given the multitude of violations harming the models, and the similarity of misconduct from Defendant harming the models, in the interest of judicial economy, Plaintiffs, through counsel, respectfully consolidate all actionable violations *known* into this single collective action on behalf of the following models:

14.    PLAINTIFF Paola Canas ("Canas") is, and at all times relevant to this action was, a professional model and resident of Miami-Dade County, Florida.

15.    PLAINTIFF Lina Posada ("Posada") is, and at all times relevant to this

action was, a professional model and resident of San Bernardino County, California.

16.     PLAINTIFF Keeley Hazell ("Hazell") is, and at all times relevant to this action was, a professional model and resident of Los Angeles County, California.

**B.  Defendant**

17.     Based on publicly available records, and further upon information and belief, DEFENDANT Babe's South, Inc., is a corporation organized and existing under the laws of the State of Florida with a principal place of business at 4024 North Davis Highway, Pensacola, Florida 32503.

18.     DEFENDANT Babe's South, Inc. operates a strip club named BABE'S SHOW CLUB.

19.     DEFENDANT holds, and at all times relevant, has held itself out as a strip club that engages in the adult entertainment and striptease industry in the business of entertaining its patrons with nude dancing and alcohol.

20.     DEFENDANT operates a Facebook page through which it advertises its business, events, and parties. For some of these events, images of one or more of the Models were used to market and promote Defendant's events.

**JURISDICTION AND VENUE**

21.     This Court has original federal question jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 as Plaintiffs have stated a claim under the Lanham Act, 28 U.S.C. § 1125(a)(1). This Court has supplemental jurisdiction over the Florida state law claims alleged herein pursuant to 28 U.S.C. § 1367.

22.     The Court has personal jurisdiction over Defendant based on its contact with the State of Florida, including but not limited to Defendant's registration to conduct business in Florida, its physical locations and principal place of business in Florida, and upon information and belief, Defendant committed, facilitated, assisted, encouraged or conspired to commit the actions giving rise to the harm and damages alleged herein in the State of Florida.

23.     Venue is proper in the United States District Court for the Northern District of Florida pursuant to 28 U.S.C. §§ 1391(a) and (b) because Defendant has its principal place of business in Pensacola, Florida and its acts giving rise to the claims set forth herein occurred or originated in Pensacola, which is in the Northern District of Florida.

## **FACTUAL BACKGROUND**

**A. Standard and Customary Business Practices in the Modeling and Acting Industry Require Arms-Length Negotiations over the Terms and Conditions of Usage and Remuneration for any Modeling Image**

24.     In the modeling and acting industry, reputation is critical.  Protection of a model's reputation is therefore of paramount importance.

25.     Plaintiffs are professional models who earn a living by promoting their images and likeness to select clients, commercial brands, media and entertainment outlets, as well as relying on their reputation and own brand for modeling, acting, hosting, and other opportunities.

26.     Plaintiffs' careers in modeling and private enterprise have value stemming from the goodwill and reputation that they have built, all of which is critical to

establishing a brand, being selected for jobs, and maximizing earnings.

27.    Plaintiffs have worked to establish themselves as reliable, reputable and professional.

28.    Plaintiffs must necessarily be vigilant in protecting their "brand" from harm, taint, or other diminution.

29.    Any improper or unauthorized use of an image, likeness and/or identity could substantially injure the career and career opportunities of Plaintiffs.

30.    In the modeling and acting industry, models such as Plaintiffs typically do not have a single employer, but rather work as independent contractors for different agents or entities.

31.    Plaintiffs are responsible professionals in the ordinary course. Plaintiffs seek to control the use and dissemination of their images and, thus, actively participate in vetting and selecting modeling, acting, brand spokesperson, or hosting engagements.

32.    Plaintiffs' vetting and selection of professional engagements involves a multi-tiered assessment, such as, but not limited to:

    a.  determining whether the individual or entity seeking a license and release of Plaintiffs' images, likeness and/or identity is reputable, has reputable products or services, and, through affiliation therewith, would either enhance or harm Plaintiffs' stature or reputation;

    b.  this reputational information is used in negotiating compensation which typically turns on the work Plaintiffs are hired to do, the time involved,

travel and how their images are going to be used – known as "usage" (among other variables);

c.  to protect their reputation and livelihood, Plaintiffs and/or their agents carefully and expressly define the terms and conditions of use;

d.  the entire negotiated deal is reduced to and memorialized in an integrated, written agreement of limited duration (typically 1-3 years) which defines the parties' relationship. The terms and conditions of the agreement typically, unless otherwise expressly delineated, bind and are applicable to only the parties to that agreement.

33.     Endorsing, promoting, advertising or marketing the "wrong" product, service or corporate venture, or working in or being affiliated with a disreputable industry can severely impact Plaintiffs' careers by limiting or foreclosing future modeling or brand endorsement opportunities. Conversely, association with high-end companies, products, or magazines can enhance and amplify Plaintiffs' earning potential and career opportunities by making Plaintiffs more sought after and desirable.

B.  **Defendant has Misappropriated Plaintiffs' Images, Likeness and/or Identity Without Authority, for Self-Serving Commercial Gain and Without Offering or Paying Compensation to Plaintiffs**

34.     As set forth below, Plaintiffs' images, likeness and/or identity have been misappropriated by or at the direction of Defendant.  Defendant's conduct creates the false and misleading appearance and impression that Plaintiffs either work for Defendant, have appeared and participated or will appear and participate in

activities or events at Defendant's strip club, and/or have agreed and consented to advertise, promote, market or endorse Defendant's strip club or one or more of Defendant's events or activities.

### *Plaintiff Paola Canas*

35.    Plaintiff Canas is a Colombian born model now residing and working in the United States. Canas has been in the industry for over fifteen (15) years and has found great success as a model, host, runway model, and actor. Canas has worked runway shows in her native Colombia, as well as Mexico, Ecuador, United States, and Paris, France. She heads up the international campaign and was a contracted model for Curve and their worldwide lingerie line. In Dubai, United Arab Emirates, Canas was chosen as the face of the Masters Golf Tournament, and was the image for the "International Surf and Sport Expo" in Orlando, Florida. She has worked for international brands and labels such as SOHO, KISS Underwear, Salon International, Zona Rosa, and Esteban Escobar. Canas has also appeared in numerous television shows like "FOX Sports" and on television networks such as Telemundo and TV Azteca. Canas continues to build an impressive profile and is constantly in demand between Miami, Florida, New York, New York, and Los Angeles, California. Canas has over 657 thousand Instagram followers.

36.    In all instances of commercial marketing and promotion of her image, likeness, or identity by third parties, Canas negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for

agreed-upon compensation.

37.     On at least one occasion, DEFENDANT Babe's used a stolen image of PLAINTIFF Canas to create the false perception that Canas has consented or agreed to promote, advertise, and/or endorse Babe's strip club.

38.     On October 13, 2017, Defendant uploaded Canas' image to Babe's Facebook page to promote and market its "Thirsty Thursday" event. Canas appears as the model in the center of the advertisement wearing a pink top. The advertisement depicting Canas received 4 likes and 3 shares. *See* image of PLAINTIFF Canas attached hereto as **Exhibit A** which is incorporated herein by this reference.

39.     Canas' image was used without her consent to intentionally give the impression that Canas is either a performer working at the strip club and/or that she endorses Babe's.

40.     Canas has never been employed by Defendant or contracted with Defendant to participate in events at Defendant's strip club.

41.     Canas has never been hired by Defendant or contracted with Defendant to advertise, promote, market or endorse Defendant's business or any of Defendant's events.

42.     Defendant never sought permission or authority to use Canas' image, likeness and/or identity to advertise, promote, market or endorse Defendant's business or any of Defendant's events.

43.     Canas never gave permission, or assigned, licensed or otherwise consented

to Defendant using her image, likeness and/or identity to advertise, promote, market or endorse Defendant's business or any of Defendant's events.

44.    At all times relevant to this action, Canas was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant.

45.    Defendant neither offered nor paid any remuneration to Canas for the unauthorized use of her image, likeness and/or identity.

46.    Defendant's use of Canas' image, likeness and/or identity in connection with Defendant's strip club impugns Canas' character, embarrasses her, and suggests – falsely – her support for and participation in the strip club industry.

47.    Upon information and belief, Defendant's improper use Canas' image permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Canas' images in their marketing activities and business. In doing so, Defendant has further damaged Canas.

### *Plaintiff  Lina Posada*

48.    PLAINTIFF Posada is a fashion model and designer. A native of Colombia, Posada is best known as a model for the Besame and Espiral lingerie collections. Posada has also modeled for Paradizia Swimwear, Babalu Swimwear, Irgus Swinwear, Ujeans, as well as many others. She currently has 100 thousand Instagram followers.

49.    In all instances of commercial marketing and promotion of her image, likeness and/or identity by third parties, Posada negotiated and expressly granted

authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

50.     On at least one occasion, DEFENDANT Babe's used a stolen image of PLAINTIFF Posada to create the false perception that Posada consented or agreed to promote, advertise, and/or endorse Babe's strip club.

51.     On October 13, 2017, Defendant uploaded Posada's image to Babe's Facebook page to promote and market Babe's "Thirsty Thursday" event.  Posada appears as the model to the right with blonde hair wearing a blue top. The advertisement depicting Posada received 4 likes and 3 shares. *See* image of PLAINTIFF Posada attached hereto as **Exhibit A** which is incorporated herein by this reference.

52.     Posada's image was used without her consent to intentionally give the impression that Posada is either a performer working at the strip club and/or that she endorses the strip club.

53.     Posada has never been employed by Defendant or contracted with Defendant to participate in any events at Defendant's strip club.

54.     Posada has never been hired by Defendant or contracted with Defendant to advertise, promote, market or endorse Defendant's business or any of Defendant's events.

55.     Defendant never sought permission or authority to use Posada's image, likeness and/or identity to advertise, promote, market or endorse Defendant's business or any of Defendant's events.

56.    Posada never gave permission, or assigned, licensed or otherwise consented to Defendant using her image, likeness and/or identity to advertise, promote, market or endorse Defendant's business or any of Defendant's events.

57.    At all times relevant to this action, Posada was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant.

58.    Defendant neither offered nor paid any remuneration to Posada for the unauthorized use of her image, likeness and/or identity.

59.    Defendant's use of Posada's image, likeness and/or identity in connection with Defendant's strip club impugns Posada's character, embarrasses her, and suggests – falsely – her support for and participation in the strip club industry.

60.    Upon information and belief, Defendant's improper use of Posada's image described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Posada's images in their marketing activities and business. In doing so, Defendant has further damaged Posada.

### Plaintiff Keeley Hazell

61.    PLAINTIFF Hazell is an English model, musician, singer, and actor. Hazell became one of Britain's most successful glamour models, working with publications such as *Page 3*, *Nuts,* and *Zoo Weekly*. Hazell has also made numerous television appearances   and has appeared in films such as *Horrible Bosses 2*. At 17, Hazell competed in *The Daily Star's* "Search for a Beach Babe" contest and won. She then went on to study fashion at Lewisham College. Hazell

entered *The Sun's* "Page 3 Idol" competition and was chosen as winner of £10,000 worth of clothes, a one-year membership of the Rex cinema and bar, and a one-year exclusive glamour modeling contract with *The Sun* in December of 2004. Hazell has also been on the cover of *The Sun's* 2006 and 2007 Page 3 calendars, in addition to her own wall calendars; the 2007 edition selling 30,000 copies in its first few days of release. In June 2005, Hazell appeared on the front cover of *Maxim* magazine, and on the front cover of *FHM* in September. In January 2006, she appeared on the front cover of *Loaded* magazine. Hazell was also hailed by Conservative leader David Cameron in December 2006 as an "environmental hero" for her campaigns in *The Sun*, giving environmental tips such as turning lights off during the day. In 2007, Hazell co-presented "Byte Me TV," an online program that tried to explain technology in an easy to-understand way. In 2008, Hazell appeared in the BBC documentary "Page Three Teens." Hazell released a pop music single called "Voyeur" and co-founded   a modeling agency *Muse Management*. In 2010, Hazell had her first lead role in the short film "Venus and the Sun" and a small role in the film "Like Crazy," which won both the Grand and a Special Jury Prize at the 2011 Sundance Film Festival. In 2012, Hazell played a supporting role in the British gangster movie "St George's Day." Hazell then became the face of Sony Computer Entertainment Europe's Formula One 06 video game for PlayStation 2, PlayStation Portable, and F1 CE for PlayStation 3. Hazell is currently the face of MotorStorm: Pacific Rift for PlayStation 3. In 2015, Hazell landed a role in E!'s first scripted drama, "The Royals." Hazell also

starred in the comedy film "Awful Nice" and in the horror film "Whispers." She also appeared in the 2016 short film "Queen of Hearts." She was also named alongside the likes of David Attenborough, Prince Charles, and Arnold Schwarzenegger in the Tories' list.

62.     In all instances of commercial marketing and promotion of her image, likeness and/or identity by third parties, Hazell negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

63.     On at least one occasion, DEFENDANT Babe's used a stolen image of PLAINTIFF Hazell to create the false perception that Hazell consented or agreed to promote, advertise, and/or endorse Babe's strip club.

64.     On October 12, 2019, Defendant uploaded Hazell's image to Babe's Facebook page to promote and market Babe's "Halloween Party White Trash Bash" event. Hazell appears as the dark blonde model to the left of the advertisement wearing a white tank top. Hazell's image was also used to advertise "1st Place - $500," "2nd Place - Bottle Service," "3rd Place - $200 Cash or Bar Tab." The caption next to Hazell's image also provided, "Come to the biggest Halloween party in town!" *See* image of PLAINTIFF Hazell attached hereto as **Exhibit B** which is incorporated herein by this reference.

65.     Hazell's image was used without her consent to intentionally give the impression that Hazell is either a performer working at the strip club and/or that she endorses the strip club.

66.    Hazell has never been employed by Defendant or contracted with Defendant to participate in any events at Defendant's strip club.

67.    Hazell has never been hired by Defendant or contracted with Defendant to advertise, promote, market or endorse Defendant's business or any of Defendant's events.

68.    Defendant never sought permission or authority to use Hazell's image, likeness and/or identity to advertise, promote, market or endorse Defendant's business or any of Defendant's events.

69.    Hazell never gave permission, or assigned, licensed or otherwise consented to Defendant using her image, likeness and/or identity to advertise, promote, market or endorse Defendant's business or any of Defendant's events.

70.    At all times relevant to this action, Hazell was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant.

71.    Defendant neither offered nor paid any remuneration to Hazell for the unauthorized use of her image, likeness and/or identity.

72.    Defendant's use of Hazell's image, likeness and/or identity in connection with Defendant's strip club impugns Hazell's character, embarrasses her, and suggests – falsely – her support for and participation in the strip club industry.

73.    Upon information and belief, Defendant's improper use of Hazell's image described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Hazell's images in their marketing

activities and business. In doing so, Defendant has further damaged Hazell.

### *Plaintiff Paola Canas' Causes of Action*

### Canas COUNT I
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising)

74.  Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendant and protects Canas from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ." 15 U.S.C. §1125(a)(1)(B).

75.  At all times relevant to this action, Canas was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

76.  Defendant used Canas' image, likeness and/or identity as described herein without authority to create the perception that Canas worked at or was otherwise affiliated with Defendant's strip club, endorsed Defendant's business and activities, and/or consented to or authorized Defendant to use her image to advertise, promote, and market Defendant's business and/or Defendant's events and activities.

77.  Defendant's use of Canas' image, likeness and/or identity to advertise, promote and market Defendant's business and/or Defendant's events and activities as described in this Complaint was false and misleading.

78.     Defendant's unauthorized use of Canas' image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Canas worked at or was otherwise affiliated with Defendant, endorsed Defendant's business, or Defendant's events or activities, or consented to or authorized Defendant's usage of her image to advertise, promote, and market Defendant's business or Defendant's events and activities and/or that Canas would participate in or appear at the specific events promoted in the advertisement.

79.     Defendant's false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendant, as to the general quality of attendees and participants of Defendant's strip club and in its events, as well as specifically whether Canas worked at or was otherwise affiliated with Defendant, endorsed Defendant's business or Defendant's events or activities, or consented to or authorized Defendant's usage of her image to advertise, promote, and market Defendant's business or Defendant's events and activities.

80.     Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Canas worked at or was otherwise affiliated with Defendant, endorsed Defendant's business or Defendant's events and activities, or consented to or authorized Defendant's usage of her image to advertise, promote, and market Defendant's business or Defendant's events and activities.

81.     Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendant, visit Defendant's strip club, and participate in events at Defendant's strip club and had a material effect and impact on the decision of customers and prospective customers and participants to join Defendant, visit Defendant's strip club and take part in the events at Defendant's strip club.

82.     Defendant's advertisements, promotions and marketing of Defendant's strip club and events occur in and are targeted to interstate commerce. Specifically, Defendant promotes its business and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendant principally uses the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure attendance at Defendant's events.

83.     Defendant's unauthorized use of Canas' image, likeness and/or identity as described herein was designed to benefit Defendant's business interests by, among other things, promoting Defendant's strip club and activities and attracting clientele to Defendant's strip club.

84.     Defendant knew or should have known that its unauthorized use of Canas' image, likeness and/or identity would cause consumer confusion as described in this Complaint.

85.     Defendant's unauthorized use of Canas' image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

86.     As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

87.     Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of its conduct, deprived Canas of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Canas.

88.     The method and manner in which Defendant used the image of Canas further evinces that Defendant was aware of or consciously disregarded the fact that Canas did not consent to Defendant's use of her image to advertise Defendant's business.

89.     Defendant has caused irreparable harm to Canas, her reputation and brand by attributing to Canas the adult entertainment lifestyle and activities at Defendant's strip club.

90.     Defendant's unauthorized use of Canas' image, likeness and/or identity directly and proximately caused and continue to cause damage to Canas in an amount to be determined at trial.

**WHEREFORE**, Canas respectfully requests that the Court issue a judgment against Defendant and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## Canas COUNT II
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement)**

91.     Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant and protects Canas from the conduct described herein.

92.     Defendant used Canas' image to create the false impression with the public that Canas either worked at Defendant's strip club, and/or endorsed Defendant's business. This was done to promote and attract clientele to Defendant's strip club, and thereby generate revenue for Defendant. Thus, this was done in furtherance of Defendant's commercial benefit.

93.     Canas is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendant's customers are the exact demographic that views Canas' images in magazines and online.

94.     Both Canas and Defendant's strip club compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group of men.

95.     As such, an unauthorized use of Canas' image to promote a strip club created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Canas.

96.     Defendant's use of Canas' image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Canas' fans and present and prospective clients into believing

that Defendant's advertisements are endorsed by Canas, or sponsored, approved or associated with Canas.

97.     Despite the fact that Defendant was at all times aware that Canas neither worked at, nor endorsed its strip club, nevertheless, it used Canas' image to mislead potential customers as to Canas' employment at and/or affiliation with Defendant.

98.     Defendant knew that its use of Canas' image would cause consumer confusion as to Canas' sponsorship and/or employment at Defendant's strip club.

99.     Upon information and belief, Defendant's use of Canas' image did in fact cause consumer confusion as to Canas' employment at and/or endorsement of Defendant's business, and the goods and services provided by Defendant.

100.    As a direct and proximate result of Defendant's actions, Canas has no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisement depicting Canas' image, likeness, and/or identity, or how Canas' image, likeness, and/or identity are being depicted by Defendant.

101.    Further, any failure, neglect or default by Defendant will reflect adversely on Canas as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Canas to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Canas.

102.    Due to Defendant's unauthorized use of Canas' image, Canas has been damaged in an amount to be determined at trial.

**WHEREFORE**, Canas respectfully requests that the Court enter a judgment against Defendant and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

### Canas COUNT III
### (Violation of Fla. Stat. § 540.08: Right of Publicity; Unauthorized Misappropriation of Name/Likeness)

103.    Canas has a statutory right of publicity under Section 540.08, Florida Statutes.

104.    Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, image, or other likeness of any natural person without the express written or oral consent to such use."

105.    Despite the clear language of Section 540.08, Defendant published Canas' image, likeness and/or identity on a social media outlet, among others, to promote, advertise and market Defendant's strip club and/or Defendant's events and activities.

106.    At all times relevant to this action, Canas was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

107.    Defendant never sought permission or authority to use Canas' image, likeness and/or identity to advertise, promote, market or endorse Defendant's business or any of Defendant's events or activities.

108.    Canas never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's business or any of Defendant's events or activities.

109.    Defendant intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Canas' image, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

110.    Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of its conduct, deprived Canas of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Canas.

111.    At a minimum, Defendant's conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Canas' rights.

112.    Alternatively, Defendant acted negligently towards Canas in using and disseminating, without authority, her image, likeness and/or identity on a social media outlet to promote, advertise and market Defendant's strip club and/or Defendant's events and activities.

113.    Defendant has caused irreparable harm to Canas, her reputation and brand

by attributing to Canas the adult entertainment lifestyle and activities at Defendant's strip club.

114.    Defendant has also damaged Canas as a direct and proximate result of its unauthorized use of Canas' image, likeness and/or identity without compensating Canas. Defendant's conduct has been despicable and taken in conscious disregard of Canas' rights.

**WHEREFORE**, Canas respectfully requests that the Court issue a judgment against Defendant for all remedies available under Fla. Stat. §540.08, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

### Canas COUNT IV
### (Violation of Common Law Right of Publicity;
### Unauthorized Misappropriation of Name or Likeness)

115.    Canas has a common law right of publicity.

116.    Defendant may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, image, or other likeness of Canas without express written or oral consent to such use.

117.    At all times relevant to this action, Canas was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

118.    Defendant published, printed, displayed and/or publicly used Canas' image, likeness and/or identity on its social media outlet, among others, for

purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing of Defendant and Defendant's events and activities.

119.    Defendant took these actions without Canas' permission, consent or authority.  In fact, Defendant never sought permission nor authority to use Canas' image, likeness and/or identity to advertise, promote, market or endorse Defendant's business or any of Defendant's events or activities.

120.    Canas never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's business or any of Defendant's events or activities.

121.    Defendant intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Canas' image, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

122.    Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of its conduct, deprived Canas of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Canas.

123.    At a minimum, Defendant's conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Canas' rights.

124.    Alternatively, Defendant acted negligently towards Canas in using and

disseminating, without authority, her image, likeness and/or identity on Defendant's social media outlet to promote, advertise and market Defendant's strip club and Defendant's events and activities.

125.    Defendant has caused irreparable harm to Canas, her reputation and brand by attributing to Canas the adult entertainment lifestyle and activities at Defendant's strip club.

126.    Defendant has also damaged Canas as a direct and proximate result of its unauthorized use of Canas' image, likeness and/or identity without compensating Canas.

**WHEREFORE**, Canas respectfully requests that the Court issue a judgment against Defendant for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## Canas COUNT V
### (Conversion)

127.    Canas is, and all at relevant times was, the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

128.    Canas has, and at all times relevant herein had, an intangible property interest in her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

129.     By its acts and conduct alleged above, Defendant has converted Canas' property rights, including without limitation, Canas' image, likeness and/or identity for Defendant's use and wrongful disposition for financial gain.

130.     Canas is informed and believes and, on such information, alleges that Defendant has refused to return Canas' property to her or pay for the deprivation of Canas' property.

131.     As a result, Canas has suffered compensatory and exemplary damages to be determined according to proof at trial; but Canas alleges that the same are within the jurisdiction of the Court.

132.     Further, Canas is informed and believes and thereon alleges that in engaging in the conduct described above, Defendant acted with oppression and/or malice. Defendant's conduct has been despicable and taken in conscious disregard of Canas' rights.

**WHEREFORE**, Canas respectfully requests this Court to issue a judgment against Defendant and for all remedies available under the common law claim for conversion, including but not limited to actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits, and/or other relief deemed just and proper.

### Canas COUNT VI
### (Unjust Enrichment)

133.     Canas has conferred a benefit upon Defendant by virtue of Defendant's usage of her image without compensation.

134.   At all times relevant to this action, Canas was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

135.   Defendant was aware that Canas' image, likeness and/or identity was valuable.

136.   Defendant was aware of the resulting benefit from usage of Canas' image, likeness and/or identity.

137.   Defendant has retained profits and other benefits conferred upon it by using Canas' image, likeness and/or identity to promote and advertise Defendant's business and/or Defendant's events and activities.

138.   It would be inequitable for Defendant to retain the benefits conferred upon it by using Canas' image, likeness and/or identity without paying fair value for the image.

**WHEREFORE**, Canas respectfully requests that the Court issue a judgment against Defendant for damages, including but not limited to actual damages, costs, interest, restitution of unlawful proceeds, including Defendant's gross profits and such other and further relief in law or equity as this Court deems just and proper.

### *Plaintiff Lina Posada's Causes of Action*

### Posada COUNT I
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising)

139.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendant and protects Posada from the conduct described herein. Specifically,

the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."   15 U.S.C. §1125(a)(1)(B).

140.    At all times relevant to this action, Posada was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

141.    Defendant used Posada's image, likeness and/or identity as described herein without authority to create the perception that Posada worked at or was otherwise affiliated with Defendant's strip club, endorsed Defendant's business and activities, and/or consented to or authorized Defendant to use her image to advertise, promote, and market Defendant's business and/or Defendant's events and activities.

142.    Defendant's use of Posada's image, likeness and/or identity to advertise, promote and market Defendant's business and/or Defendant's events and activities as described in this Complaint was false and misleading.

143.    Defendant's unauthorized use of Posada's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Posada worked at or was otherwise affiliated with Defendant, endorsed Defendant's business, or Defendant's events or activities, or consented to or authorized Defendant's usage of her image to advertise, promote, and market Defendant's business or Defendant's events and

activities and/or that Posada would participate in or appear at the specific events promoted in the advertisement.

144.    Defendant's false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendant, as to the general quality of attendees and participants of Defendant's strip club and in its events, as well as specifically whether Posada worked at or was otherwise affiliated with Defendant, endorsed Defendant's business or Defendant's events or activities, or consented to or authorized Defendant's usage of her image to advertise, promote, and market Defendant's business or Defendant's events and activities.

145.    Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Posada worked at or was otherwise affiliated with Defendant, endorsed Defendant's business or Defendant's events and activities, or consented to or authorized Defendant's usage of her image to advertise, promote, and market Defendant's business or Defendant's events and activities.    Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendant, visit Defendant's strip club, and participate in events at Defendant's strip club and had a material effect and impact on the decision of members and prospective members and participants to join Defendant, visit Defendant's strip club and take part in the events at Defendant's strip club.

146.     Defendant's advertisements, promotions and marketing of Defendant's strip club and events occur in and are targeted to interstate commerce. Specifically, Defendant promotes its business and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendant principally uses the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Defendant's events.

147.     Defendant's unauthorized use of Posada's image, likeness and/or identity as described herein was designed to benefit Defendant's business interests by, among other things, promoting Defendant's strip club and activities and attracting clientele to Defendant's strip club.

148.     Defendant knew or should have known that its unauthorized use of Posada's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

149.     Defendant's unauthorized use of Posada's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

150.     As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

151.     Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of its conduct, deprived Posada of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Posada.

152.   The method and manner in which Defendant used the image of Posada further evinces that Defendant was aware of or consciously disregarded the fact that Posada did not consent to Defendant's use of the image to advertise Defendant's business.

153.   Defendant has caused irreparable harm to Posada, her reputation and brand by attributing to Posada the adult entertainment lifestyle and activities at Defendant's strip club.

154.   Defendant's unauthorized use of Posada's image, likeness and/or identity directly and proximately caused and continue to cause damage to Posada in an amount to be determined at trial.

**WHEREFORE**, Posada respectfully requests that the Court issue a judgment against Defendant and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

<u>**Posada COUNT II**</u>
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement)**

155.   Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant and protects Posada from the conduct described herein.

156.   Defendant used Posada's image to create the false impression with the public that Posada either worked at Defendant's strip club, and/or endorsed Defendant's business. This was done to promote and attract clientele to

Defendant's strip club, and thereby generate revenue for Defendant. Thus, this was done in furtherance of Defendant's commercial benefit.

157.    Posada is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendant's customers are the exact demographic that views Posada's images in magazines and online.

158.    Both Posada and Defendant's strip club compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group of men.

159.    As such, an unauthorized use of Posada's image to promote a strip club created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Posada.

160.    Defendant's use of Posada's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Posada's fans and present and prospective clients into believing that Defendant's advertisements are endorsed by Posada, or sponsored, approved or associated with Posada.

161.    Despite the fact that Defendant was at all times aware that Posada neither worked at, nor endorsed its strip club, nevertheless, it used Posada's image to mislead potential customers as to Posada's employment at and/or affiliation with Defendant.

162.    Defendant knew that its use of Posada's image would cause consumer

confusion as to Posada's sponsorship and/or employment at Defendant's strip club.

163.    Upon information and belief, Defendant's use of Posada's image did in fact cause consumer confusion as to Posada's employment at and/or endorsement of Defendant's business, and the goods and services provided by Defendant.

164.    As a direct and proximate result of Defendant's actions, Posada has no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisement depicting Posada's image, likeness and/or identity, or how Posada's image, likeness and/or identity are being depicted by Defendant.

165.    Further, any failure, neglect or default by Defendant will reflect adversely on Posada as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Posada to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Posada.

166.    Due to Defendant's unauthorized use of Posada's image, Posada has been damaged in an amount to be determined at trial.

**WHEREFORE**, Posada respectfully requests that the Court enter a judgment against Defendant and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment

interest, and/or such further relief that is just and proper.

**Posada COUNT III**
**(Violation of Fla. Stat. § 540.08: Right of Publicity;**
**Unauthorized Misappropriation of Name/Likeness)**

167.   Posada has a statutory right of publicity under Section 540.08, Florida
Statutes.

168.   Section 540.08, Florida Statutes, provides that: "[n]o person shall publish,
print, display or otherwise publicly use for purposes of trade or for any commercial
or advertising purpose the name, portrait, image, or other likeness of any natural
person without the express written or oral consent to such use."

169.   Despite the clear language of Section 540.08, Defendant published
Posada's image, likeness and/or identity on a social media outlet, among others, to
promote, advertise and market Defendant's strip club and/or Defendant's events
and activities.

170.   At all times relevant to this action, Posada was and is the exclusive owner
of all rights, title, and interest to her image, likeness and/or identity unlawfully
converted by Defendant for Defendant's benefit.

171.   Defendant never sought permission or authority to use Posada's image,
likeness and/or identity to advertise, promote, market or endorse Defendant's
business or any of Defendant's events or activities.

172.   Posada never consented to, permitted, assigned, licensed, or otherwise
agreed to Defendant's use of her image, likeness and/or identity to advertise,
promote, market or endorse Defendant's business or any of Defendant's events or

activities.

173.   Defendant intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Posada's image, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

174.   Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of its conduct, deprived Posada of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Posada.

175.   At a minimum, Defendant's conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Posada's rights.

176.   Alternatively, Defendant acted negligently towards Posada in using and disseminating, without authority, her image, likeness and/or identity on a social media outlet to promote, advertise and market Defendant's strip club and/or Defendant's events and activities.

177.   Defendant has caused irreparable harm to Posada, her reputation and brand by attributing to Posada the adult entertainment lifestyle and activities at Defendant's strip club.

178.   Defendant has also damaged Posada as a direct and proximate result of its unauthorized use of Posada's image, likeness and/or identity without compensating Posada. Defendant's conduct has been despicable and taken in conscious disregard of Posada's rights.

**WHEREFORE**, Posada respectfully requests that the Court issue a judgment against Defendant for all remedies available under Fla. Stat. §540.08, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

### Posada COUNT IV
### (Violation of Common Law Right of Publicity;
### Unauthorized Misappropriation of Name or Likeness)

179.    Posada has a common law right of publicity.

180.    Defendant may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, image, or other likeness of Posada without express written or oral consent to such use.

181.    At all times relevant to this action, Posada was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

182.    Defendant published, printed, displayed and/or publicly used Posada's image, likeness and/or identity on its social media outlet, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing of Defendant and Defendant's events and activities.

183.    Defendant took these actions without Posada's permission, consent or authority.    In fact, Defendant never sought permission nor authority to use Posada's image, likeness and/or identity to advertise, promote, market or endorse

Defendant's business or any of Defendant's events or activities.

184.    Posada never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's business or any of Defendant's events or activities.

185.    Defendant intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Posada's image, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

186.    Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of its conduct, deprived Posada of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Posada.

187.    At a minimum, Defendant's conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Posada's rights.

188.    Alternatively, Defendant acted negligently towards Posada in using and disseminating, without authority, her image, likeness and/or identity on Defendant's social media outlet to promote, advertise and market Defendant's strip club and Defendant's events and activities.

189.    Defendant has caused irreparable harm to Posada, her reputation and brand by attributing to Posada the adult entertainment lifestyle and activities at Defendant's strip club.

190.    Defendant has also damaged Posada as a direct and proximate result of its unauthorized use of Posada's image, likeness and/or identity without compensating Posada.

**WHEREFORE**, Posada respectfully requests that the Court issue a judgment against Defendant for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## Posada COUNT V
### (Conversion)

191.    Posada is, and all at relevant times was, the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

192.    Posada has, and at all times relevant herein had, an intangible property interest in her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

193.    By its acts and conduct alleged above, Defendant has converted Posada's property rights, including without limitation, Posada's image, likeness and/or identity for Defendant's use and wrongful disposition for financial gain.

194.    Posada is informed and believes and, on such information, alleges that Defendant has refused to return Posada's property to her or pay for the deprivation of Posada's property.

195.    As a result, Posada has suffered compensatory and exemplary damages to be determined according to proof at trial; but Posada alleges that the same are within the jurisdiction of the Court.

196.    Further, Posada is informed and believes and thereon alleges that in engaging in the conduct described above, Defendant acted with oppression and/or malice. Defendant's conduct has been despicable and taken in conscious disregard of Posada's rights.

**WHEREFORE**, Posada respectfully requests this Court to issue a judgment against Defendant and for all remedies available under the common law claim for conversion, including but not limited to actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits, and/or other relief deemed just and proper.

### Posada COUNT VI
### (Unjust Enrichment)

197.    Posada has conferred a benefit upon Defendant by virtue of Defendant's usage of her image without compensation.

198.    At all times relevant to this action, Posada was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

199.    Defendant was aware that Posada's image, likeness and/or identity was valuable.

200.    Defendant was aware of the resulting benefit from usage of Posada's

image, likeness and/or identity.

201.     Defendant has retained profits and other benefits conferred upon it by using Posada's image, likeness and/or identity to promote and advertise Defendant's business and/or Defendant's events and activities.

202.     It would be inequitable for Defendant to retain the benefits conferred upon it by using Posada's image, likeness and/or identity without paying fair value for the image.

**WHEREFORE**, Posada respectfully requests that the Court issue a judgment against Defendant for damages, including but not limited to actual damages, costs, interest, restitution of unlawful proceeds, including Defendant's gross profits and such other and further relief in law or equity as this Court deems just and proper.

### *Plaintiff Keeley Hazell's Causes of Action*

### <u>Hazell COUNT I</u>
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising)**

203.     Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendant and protects Hazell from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ." 15 U.S.C. §1125(a)(1)(B).

204.     At all times relevant to this action, Hazell was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully

converted by Defendant for Defendant's benefit.

205.    Defendant used Hazell's image, likeness and/or identity as described herein without authority to create the perception that Hazell worked at or was otherwise affiliated with Defendant's strip club, endorsed Defendant's business and activities, and/or consented to or authorized Defendant to use her image to advertise, promote, and market Defendant's business and/or Defendant's events and activities.

206.    Defendant's use of Hazell's image, likeness and/or identity to advertise, promote and market Defendant's business and/or Defendant's events and activities as described in this Complaint was false and misleading.

207.    Defendant's unauthorized use of Hazell's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Hazell worked at or was otherwise affiliated with Defendant, endorsed Defendant's business, or Defendant's events or activities, or consented to or authorized Defendant's usage of her image to advertise, promote, and market Defendant's business or Defendant's events and activities and/or that Hazell would participate in or appear at the specific events promoted in the advertisement.

208.    Defendant's false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendant, as to the general quality of attendees and participants of Defendant's strip club and in its events, as well as specifically whether Hazell worked at or was otherwise

affiliated with Defendant, endorsed Defendant's business or Defendant's events or activities, or consented to or authorized Defendant's usage of her image to advertise, promote, and market Defendant's business or Defendant's events and activities.

209.   Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Hazell worked at or was otherwise affiliated with Defendant, endorsed Defendant's business or Defendant's events and activities, or consented to or authorized Defendant's usage of her image to advertise, promote, and market Defendant's business or Defendant's events and activities.   Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendant, visit Defendant's strip club, and participate in events at Defendant's strip club and had a material effect and impact on the decision of members and prospective members and participants to join Defendant, visit Defendant's strip club and take part in the events at Defendant's strip club.

210.   Defendant's advertisements, promotions and marketing of Defendant's strip club and events occur in and are targeted to interstate commerce. Specifically, Defendant promotes its business and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendant principally uses the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or

lure membership and attendance at Defendant's events.

211.    Defendant's unauthorized use of Hazell's image, likeness and/or identity as described herein was designed to benefit Defendant's business interests by, among other things, promoting Defendant's strip club and activities and attracting clientele to Defendant's strip club.

212.    Defendant knew or should have known that its unauthorized use of Hazell's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

213.    Defendant's unauthorized use of Hazell's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

214.    As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

215.    Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of its conduct, deprived Hazell of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Hazell.

216.    The method and manner in which Defendant used the image of Hazell further evinces that Defendant was aware of or consciously disregarded the fact that Hazell did not consent to Defendant's use of the image to advertise Defendant's business.

217.    Defendant has caused irreparable harm to Hazell, her reputation and brand by attributing to Hazell the adult entertainment lifestyle and activities at

Defendant's strip club.

218.    Defendant's unauthorized use of Hazell's image, likeness and/or identity directly and proximately caused and continue to cause damage to Hazell in an amount to be determined at trial.

**WHEREFORE**, Hazell respectfully requests that the Court issue a judgment against Defendant and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

<u>**Hazell COUNT II**</u>
(**Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement**)

219.    Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant and protects Hazell from the conduct described herein.

220.    Defendant used Hazell's image to create the false impression with the public that Hazell either worked at Defendant's strip club, and/or endorsed Defendant's business. This was done to promote and attract clientele to Defendant's strip club, and thereby generate revenue for Defendant. Thus, this was done in furtherance of Defendant's commercial benefit.

221.    Hazell is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendant's customers are the exact demographic that views Hazell's images in magazines and online.

222.    Both Hazell and Defendant's strip club compete in the entertainment

industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group of men.

223.   As such, an unauthorized use of Hazell's image to promote a strip club created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Hazell.

224.   Defendant's use of Hazell's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Hazell's fans and present and prospective clients into believing that Defendant's advertisements are endorsed by Hazell, or sponsored, approved or associated with Hazell.

225.   Despite the fact that Defendant was at all times aware that Hazell neither worked at, nor endorsed its strip club, nevertheless, it used Hazell's image to mislead potential customers as to Hazell's employment at and/or affiliation with Defendant.

226.   Defendant knew that its use of Hazell's image would cause consumer confusion as to Hazell's sponsorship and/or employment at Defendant's strip club.

227.   Upon information and belief, Defendant's use of Hazell's image did in fact cause consumer confusion as to Hazell's employment at and/or endorsement of Defendant's business, and the goods and services provided by Defendant.

228.   As a direct and proximate result of Defendant's actions, Hazell has no control over the nature and quality of the line of products or services provided by

Defendant, the nature of the advertisement depicting Hazell's image, likeness and/or identity, or how Hazell's image, likeness and/or identity are being depicted by Defendant.

229.    Further, any failure, neglect or default by Defendant will reflect adversely on Hazell as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Hazell to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Hazell.

230.    Due to Defendant's unauthorized use of Hazell's image, Hazell has been damaged in an amount to be determined at trial.

**WHEREFORE**, Hazell respectfully requests that the Court enter a judgment against Defendant and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

<u>**Hazell COUNT III**</u>
**(Violation of Fla. Stat. § 540.08: Right of Publicity;
Unauthorized Misappropriation of Name/Likeness)**

231.  Hazell has a statutory right of publicity under Section 540.08, Florida Statutes.

232.  Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial

or advertising purpose the name, portrait, image, or other likeness of any natural person without the express written or oral consent to such use."

233. Despite the clear language of Section 540.08, Defendant published Hazell's image, likeness and/or identity on a social media outlet, among others, to promote, advertise and market Defendant's strip club and/or Defendant's events and activities.

234. At all times relevant to this action,  was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

235. Defendant never sought permission or authority to use Hazell's image, likeness and/or identity to advertise, promote, market or endorse Defendant's business or any of Defendant's events or activities.

236. Hazell never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's business or any of Defendant's events or activities.

237. Defendant intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Hazell's image, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

238. Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of its conduct, deprived Hazell of a property interest,

and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Hazell.

239.   At a minimum, Defendant's conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Hazell's rights.

240.   Alternatively, Defendant acted negligently towards Hazell in using and disseminating, without authority, her image, likeness and/or identity on a social media outlet to promote, advertise and market Defendant's strip club and/or Defendant's events and activities.

241.   Defendant has caused irreparable harm to Hazell, her reputation and brand by attributing to Hazell the adult entertainment lifestyle and activities at Defendant's strip club.

242.   Defendant has also damaged Hazell as a direct and proximate result of its unauthorized use of Hazell's image, likeness and/or identity without compensating Hazell. Defendant's conduct has been despicable and taken in conscious disregard of Hazell's rights.

**WHEREFORE**, Hazell respectfully requests that the Court issue a judgment against Defendant for all remedies available under Fla. Stat. §540.08, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

**Hazell COUNT IV**
**(Violation of Common Law Right of Publicity;**
**Unauthorized Misappropriation of Name or Likeness)**

243.    Hazell has a common law right of publicity.

244.    Defendant may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, image, or other likeness of Hazell without express written or oral consent to such use.

245.    At all times relevant to this action, Hazell was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

246.    Defendant published, printed, displayed and/or publicly used Hazell's image, likeness and/or identity on its social media outlet, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing of Defendant and Defendant's events and activities.

247.    Defendant took these actions without Hazell's permission, consent or authority.   In fact, Defendant never sought permission nor authority to use Hazell's image, likeness and/or identity to advertise, promote, market or endorse Defendant's business or any of Defendant's events or activities.

248.    Hazell never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's business or any of Defendant's events or activities.

249.    Defendant intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Hazell's image, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

250.    Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of its conduct, deprived Hazell of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Hazell.

251.    At a minimum, Defendant's conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Hazell's rights.

252.    Alternatively, Defendant acted negligently towards Hazell in using and disseminating, without authority, her image, likeness and/or identity on Defendant's social media outlet to promote, advertise and market Defendant's strip club and Defendant's events and activities.

253.    Defendant has caused irreparable harm to Hazell, her reputation and brand by attributing to Hazell the adult entertainment lifestyle and activities at Defendant's strip club.

254.    Defendant has also damaged Hazell as a direct and proximate result of its unauthorized use of Hazell's image, likeness and/or identity without compensating Hazell.

**WHEREFORE**, Hazell respectfully requests that the Court issue a judgment against Defendant for all remedies available under a claim of misappropriation including,

but not limited to, actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

### Hazell COUNT V
### (Conversion)

255.    Hazell is, and all at relevant times was, the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

256.    Hazell has, and at all times relevant herein had, an intangible property interest in her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

257.    By its acts and conduct alleged above, Defendant has converted Hazell's property rights, including without limitation, Hazell's image, likeness and/or identity for Defendant's use and wrongful disposition for financial gain.

258.    Hazell is informed and believes and, on such information, alleges that Defendant has refused to return Hazell's property to her or pay for the deprivation of Hazell's property.

259.    As a result, Hazell has suffered compensatory and exemplary damages to be determined according to proof at trial; but Hazell alleges that the same are within the jurisdiction of the Court.

260.    Further, Hazell is informed and believes and thereon alleges that in engaging in the conduct described above, Defendant acted with oppression and/or

malice. Defendant's conduct has been despicable and taken in conscious disregard of Hazell's rights.

**WHEREFORE**, Hazell respectfully requests this Court to issue a judgment against Defendant and for all remedies available under the common law claim for conversion, including but not limited to actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits, and/or other relief deemed just and proper.

### Hazell COUNT VI
### (Unjust Enrichment)

261.     Hazell has conferred a benefit upon Defendant by virtue of Defendant's usage of her image without compensation.

262.     At all times relevant to this action, Hazell was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

263.     Defendant was aware that Hazell's image, likeness and/or identity was valuable.

264.     Defendant was aware of the resulting benefit from usage of Hazell's image, likeness and/or identity.

265.     Defendant has retained profits and other benefits conferred upon it by using Hazell's image, likeness and/or identity to promote and advertise Defendant's business and/or Defendant's events and activities.

266.     It would be inequitable for Defendant to retain the benefits conferred upon

it by using Hazell's image, likeness and/or identity without paying fair value for the image.

**WHEREFORE**, Hazell respectfully requests that the Court issue a judgment against Defendant for damages, including but not limited to actual damages, costs, interest, restitution of unlawful proceeds, including Defendant's gross profits and such other and further relief in law or equity as this Court deems just and proper.

## PRAYER FOR RELIEF

**WHEREFORE**, each Plaintiff individually respectfully prays that this Court grant Judgment to each Plaintiff, respectively, and against Defendant, in an amount to be determined at trial aggregated across all Plaintiffs and as follows:

1. For damages as provided in 15 U.S.C. § 1125(a);

2. For attorneys' fees and costs of suit, as provided for in 15 U.S.C. § 1125(a);

3. For damages as provided in Fla. Stat. §540.08;

4. For general damages according to proof;

5. For special damages according to proof;

6. For consequential damages according to proof;

7. For reasonable attorneys' fees and costs as permitted by law;

8. For prejudgment interest and royalties at the legal rate;

9. For such other relief as this Court deems just and proper; and

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury on all issues so triable.

Dated: August 4, 2021.                    Respectfully submitted,

**THE CASAS LAW FIRM, P.C.**

By: */s/ Ludmila Khomiak*
Ludmila Khomiak, Esq.
Florida Bar No.: 91757
mila@talentrights.law
Brickell Bayview Center
80 S. W. 8th Street, Suite 2000
Miami, FL 33130
Phone: (786) 671-3244
Fax: (786) 671-3243
*Attorney for Plaintiffs*