UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

PAOLA CANAS, LINA POSADA,
KEELEY HAZELL, and DESSIE
MITCHESON,

    Plaintiffs,

v.　　　　　　　　　　　　　　　　　　Case No. 3:21cv942-MCR-HTC

BABE'S SOUTH, INC. d/b/a
BABE'S SHOW CLUB,

    Defendant.
_____/

## AMENDED REPORT AND RECOMMENDATION[1]

Before the Court is Plaintiffs' Motion for Default Final Judgment pursuant to Federal Rule of Civil Procedure 55(b).  ECF Doc. 32.  Upon consideration of Plaintiffs' motion, the attached exhibits, and the relevant law, the undersigned recommends the motion be granted and judgment entered in Plaintiffs' favor as set forth below.

**I.    BACKGROUND**[2]

Plaintiffs are four professional models who earn their living "by promoting

---

[1] This Report and Recommendation is being amended to consider the supplemental damages information Plaintiffs submitted in their partial objection to the initial Report and Recommendation.  ECF Doc. 35.

[2] The following facts are derived from Plaintiffs' amended complaint, ECF Doc. 14.

their images and likeness to select clients, commercial brands, media and entertainment outlets, as well as relying on their reputation and own brand for modeling, acting, hosting, and other opportunities." ECF Doc. 14 at 7. Specifically, Plaintiff Paola Canas has worked in the modeling industry for over fifteen (15) years, both in her native Colombia and internationally. *Id.* at 10. Canas has been selected as the face of the Masters Golf Tournament in Dubai and the "International Surf and Sport Expo." *Id.* She has also represented a number of international brands, including Curve, SOHO, KISS Underwear, Salon International, Zona Rosa, and Esteban Escobar. *Id.* Canas has also appeared on television networks, such as Telemundo and TV Azteca. As of the filing of the complaint, she had over 657,000 followers on Instagram. *Id.*

Plaintiff Lina Posada works as both a model and designer. *Id.* at 12. Posada has been affiliated with Paradizia Swimwear, Babalu Swimwear, Irgus Swimwear, Ujeans, and many other brands, but she is best known for her lingerie ad campaigns for Besame and Espiral. *Id.* at 12-13. As of the filing of the complaint, Posada had 100,000 followers on Instagram. *Id.* Plaintiff Keeley Hazell is a model, musician, singer, and actor. *Id.* at 15. She has been recognized as one of Britain's "most successful glamour models," and has appeared on the covers of Maxim, FHM, Loaded, and the Sun's Page 3 calendars. *Id.* She has been in several motion pictures and television series, including Hazell's Horrible Bosses 2, Venus and the Sun, and

The Royals. *Id.* at 16. Finally, Plaintiff Dessie Mitcheson is a model who became the face of Playboy Intimates, the MGM Grand Las Vegas, and Miss Pennsylvania Intercontinental. *Id.* at 18. Mitcheson has also appeared in multiple issues of the Maxim magazine. *Id.* As of the filing of the complaint, Mitcheson had 411,000 followers on Instagram. *Id.*

Plaintiffs bring this suit against Babe's South Inc., the operator of a strip club named Babe's Show Club, for using their pictures to advertise and promote the strip club's events on Facebook without Plaintiffs' consent. Plaintiffs assert the following claims against Babe's South: (1) false advertising under the Lanham Act, 15 U.S.C. § 1051 *et seq.*; (2) false endorsement under the Lanham Act; (3) violations of their right of publicity under § 540.08, Florida Statutes; (4) common law right of publicity violations; (5) conversion; and (6) unjust enrichment. ECF Doc. 1.

Although Babe's South was initially represented, *see* ECF Doc. 5, the Court granted its counsel's motion to withdraw on October 14, 2022, ECF Doc. 27. In that Order, the Court advised Babe's South that a corporate entity cannot proceed *pro se* and gave it thirty (30) days to find substitute counsel. *Id.* The Court also cautioned Babe's South that, if no counsel appears on its behalf within the allotted time, "the Court will assume Defendant has no intention of defending this action and *default will be entered accordingly*." *Id.* at 2 (emphasis added). When no notice of appearance had been filed by November 28, 2022, the Court entered an order

directing Babe's South to retain counsel and notify the Court within ten (10) days. ECF Doc. 29.  Despite the Court's express orders, no counsel appeared.  On December 21, 2022, the Court directed the clerk to enter a default against Babe's South, and Plaintiffs to submit evidentiary materials to support a default judgment, ECF Doc. 30.  In accordance with the Court's order, Plaintiffs move for the Court (1) to enter a final judgment in their favor, (2) award them damages in the amount of $360,000, (3) award $447 in costs, and (4) order Defendant to complete a Florida Rule of Civil Procedure Form 1.977.  ECF Doc. 32.  Plaintiffs support their motion with two affidavits, one from counsel Ludmila Khomiak, and the other from damages expert Stephen Chamberlin, as well as an expert report from Chamberlin.  More than fourteen (14) days have passed since the filing of the motion for default judgment, and Babe's South has not responded.

## II. LEGAL STANDARD

Rule 55 authorizes a court to enter default judgment against a defendant who has failed to plead or otherwise defend.  *See* Fed. R. Civ. P. 55(b)(2); *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244 (11th Cir. 2015).  By its default, a defendant admits the well-pleaded facts of the complaint.  *See Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F. 2d 1200, 1206 (5th Cir. 1975).  However, default is not an absolute confession of the defendant's liability and the plaintiff's right to recover; "[t]here must be a sufficient basis in the pleadings for a judgment."  *Id.*

Thus, "before entering a default judgment for damages [against a defaulted defendant], the district court must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007) (emphasis omitted).

Although the facts pled in Plaintiff's complaint are deemed admitted, "plaintiffs' allegations relating to the amount of damages are not admitted by virtue of default." *Cain v. Consumers Sols. Grp., LLC*, 2017 WL 3131053, at *3 (N.D. Ala. July 24, 2017) (citation omitted); *see also Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003) (federal law requires judicial determination of damages absent factual basis in the record). A hearing on damages is not necessary and damages may be determined based on affidavits as long as sufficient evidence is submitted to support the request for damages. *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997); *see also Giovanno v. Fabec*, 804 F.3d 1361, 1366 (11th Cir. 2015) (court may forego a hearing if "all essential evidence is already of record"). The plaintiff has the burden of proving entitlement to and the amount of damages and may meet its burden through affidavits and other evidence. *Wallace v. The Kiwi Grp., Inc.*, 247 F.R.D. 679, 681 (M.D. Fla. 2008); *see* Fed R. Civ. P. 55(a).

### III.   DISCUSSION

As an initial matter, the allegations in this case are not unique ones for this circuit or this Court. Similar allegations have been brought by other famous models or actresses against similar establishments as Defendant's. As will be discussed below, each of the courts in those other cases have found that similar allegations are sufficient to warrant the entry of a default judgment. Those cases will be discussed in more detail below and certainly support the entry of judgment in this case. *See e.g., Gibson v. Cowboys Saloon Gainesville, LLC*, 1:18-cv-138-AW-GRJ, ECF Doc. 14 (Order on Motion for Default Judgment, finding allegations were sufficient to state a claim); *Souza v. Nowhere Bottle and Soc. Club, Inc.*, 2020 WL 13420543, at *4 (S.D. Fla. Feb. 27, 2020) (collecting cases).

Thus, for the reasons discussed below, the undersigned finds Plaintiffs' allegations to be well pleaded and to provide sufficient basis to establish Defendant's liability on the Lanham Act claims.[3] The undersigned also finds Plaintiffs have submitted sufficient evidence for the Court to determine damages without an evidentiary hearing.

---

[3] Although, as stated above, Plaintiffs also asserted claims under Fla. Stat. § 540.08, a common law right to publicity, conversion, and unjust enrichment, the Court need not address those claims because the judgment will be based on an award of statutory damages under the Lanham Act. That said, the Court notes Plaintiffs have pled facts sufficient to establish Defendant's liability under those claims as well. *See Souza*, 2020 WL 13420543, at *5 (discussing similar claims based on similar allegations and citing supporting cases).

Case No. 3:21cv942-MCR-HTC

## A. False Advertisement

Plaintiffs allege Defendant's unauthorized use of their images violated section 1125 of the Lanham Act, which prohibits the commercial use of "any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities [in commercial advertising or promotion]. *See* 15 U.S.C. § 1125(a)(1)(B). "To make a prima facie showing of false advertising, Plaintiffs must plead that '(1) the defendant's statements were false or misleading; (2) the statements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on the consumers' purchasing decision; (4) the misrepresented service affects interstate commerce; and (5) it has been, or likely will be, injured as a result of the false or misleading statement." *Souza*, 2020 WL 13420543, at *4.

Here, Plaintiffs have alleged sufficient facts to support their false advertising claim. Each Plaintiff alleges Babe's South's use of her "image, likeness and/or identity" "creates the false and misleading appearance and impression that Plaintiffs either work for Defendant, have appeared and participated or will appear and participate in activities or events at Defendant's strip club, and/or have agreed and consent to advertise, promote, market or endorse Defendant's strip club or one or

more of Defendant's events or activities." ECF Doc. 1 at 9. Plaintiffs further allege Defendant's promotional materials had the capacity and did in fact deceive consumers as to each Plaintiff's affiliation with the strip club, which materially impacted consumers' decisions to attend Defendant's events. Plaintiffs have also alleged the club's promotional activity occurred in and targeted the World Wide Web, social media, and other vehicles of interstate commerce. Finally, Plaintiffs assert their reputation was damaged as a result of being improperly affiliated with the adult entertainment business. The undersigned, thus, finds Plaintiffs have adequately pled each element of their claims for false advertising and are entitled to relief. Indeed, other courts in this Circuit have found similar allegations to be sufficient to overcome a motion to dismiss. *See, e.g.*, *Souza*, 2020 WL 13420543, at *4 (collecting cases); *Gibson v. White's Place, LLC*, 2017 WL 4169690, at *2 (M.D. Fla. Sept. 20, 2017) (same).

### B. False Endorsement

Plaintiffs also assert claims for false endorsement under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A). "In the Eleventh Circuit, a false endorsement claim under the Lanham Act is treated the same as a trademark infringement or false association claim." *Gibson v. BTS N., Inc.*, 2018 WL 888872, at *5 (S.D. Fla. Feb. 14, 2018) (citing *Univ. of Ala. Bd. Of Trs. v. New Life Art, Inc.*, 683 F.3d 1266, 1278 (11th Cir. 2012)). To prove they are entitled to relief on this claim, Plaintiffs must allege: "(1)

they had trademark rights in the mark or name at issue and (2) that Defendant[ ] had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." *Id.* (citations and internal quotation marks omitted). To assert trademark rights, a plaintiff need not have registration; instead, it is sufficient to allege the mark is sufficiently distinctive. *Tana v. Dantanna's*, 611 F.3d 767, 773 (11th Cir. 2010).

A trademark infringement claim may be brought for the misappropriation of one's image, brand, or identity. *See, e.g.*, *Krupa v. Platinum Plus, LLC*, 2017 WL 1050222, at *6 (M.D. Fla. Mar. 20, 2017) (finding plaintiffs stated a claim for trademark infringement based on similar claims). As Chief Judge Walker noted in *Cowboys Saloon Gainesville, LLC*, courts have "found false endorsement to be validly plead when plaintiffs – as here – relied on their images or likeness, their social medial followings, their modeling portfolios, and their use of social media advertising." *See id.* at ECF Doc. 14 at 8-9 ("This Court is persuaded by the reasoning of the others and concludes that there is a sufficient basis for relief".). The undersigned finds no reason to reach a different conclusion here.

Each Plaintiff has alleged substantial brand recognition through their extensive work history or social media following. Additionally, Plaintiffs allege Defendant's unauthorized use of their images created undeniable confusion in consumers' minds as to Plaintiffs' association with the strip club because the parties

use similar marketing channels, i.e., social media, and target the same demographic group, i.e., male consumers. Plaintiffs' allegations state a plausible claim for false endorsement. *See id.*; *see e.g., Souza*, 2020 WL 13420543, at *4 (finding "false endorsement to be validly alleged when plaintiffs — as here — relied on their images or likenesses, their social media followings, their modeling portfolios, and their use of social media advertising").

### C. Damages

Having determined Plaintiffs have established Defendant's liability as to each of Plaintiffs' claims, the undersigned next turns to the issue of damages. Under the Lanham Act, Plaintiffs may recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. *Burger King Corp. v. Mason*, 710 F.2d 1480, 1495 (11th Cir. 1983). Additionally, the Act "vests considerable discretion in the district court." *Id*. "[D]amages may be awarded even when they are not susceptible to precise calculations [w]here the wrong is of such a nature as to preclude exact ascertainment of the amount of damages." *Ramada Inns, Inc. v. Gadsden Motel Co.*, 804 F.2d 1562, 1565 (11th Cir. 1986).

Plaintiffs rely on a "fair market value" calculation of the images used by Defendant as determined by expert, Stephen Chamberlin – an agent with over thirty (30) years of experience in the model and talent industry, who frequently opines on models' earning potential in similar litigation, to support their claim for damages.

ECF Doc. 32-2 at 15, 31.  Plaintiffs seek a total of $360,000 in actual damages for all Plaintiffs.  ECF Doc. 32-1 at 8.  However, as discussed below, while the Court finds Chamberlin's methodology is adequate to support a damages award under the Lanham Act, the Court has reduced the amount sought based on what appears to be a mathematical error by Chamberlin.

Chamberlin's fair market value calculation attempts to "recreate the negotiation process" that each Plaintiff would have undergone had Defendant sought their consent to use their images.  *Id.* at 11.  To arrive at the fair market value for each of Plaintiff's images, Chamberlin "takes into consideration the factors normally considered by talent, clients, and their respective agents and representatives when negotiating the value of the use of the models' images to promote the clients' goods or services," including (1) the model's desirability as shown from the demand for her services; (2) the model's work history, and (3) the types of business seeking the model's services, to determine a "day rate" and considering for each Plaintiff how the image was used by Defendant i.e., advertising and social media, how broadly it was disseminated, and whether there were any alterations.  ECF Doc. 32-1 at 11, 16; ECF Doc. 32-2 at 5.  Also, in determining the length of time an image is used, Chamberlin looked at the "date of first use" and used one year as the default contract term.  ECF Doc. 35-1.  In other words, Chamberlin assumes any contract negotiated for the use of any of the Plaintiff's images would have been for a period of at least

one year, even if the purchaser ultimately decided to use the image for a shorter period of time. *Id.* If the image is used for any part of a second year, the contract automatically rolls over for another year. *Id.*

Chamberlin relied on his extensive experience in the industry as well as documentation provided by the Plaintiffs, including past modeling contracts, tax documents, and earning statements. ECF Doc. 32-1 at 21. Additionally, Chamberlin conferred with modeling agents. *Id.* at 22. Chamberlin's methodology has been found acceptable to support a damages award under Lanham Act by this Court, as well as other courts. *See e.g., Gibson v. Cowboys Saloon Gainesville, LLC*, 2020 WL 3055453, at *7 (N.D. Fla. Feb. 5, 2020), report and recommendation approved in part, 2020 WL 1466412 (N.D. Fla. Mar. 25, 2020) (collecting cases). (noting "other courts addressing similar misappropriation claims … have found Mr. Chamberlin's 'fair market value' determination to be an adequate method of calculating damages for a defendant's unauthorized use of the identity or persona of a plaintiff as a human being, not a copyrighted image") (collecting cases).[4] Thus, the Court finds Chamberlin's methodology to be sufficient here.

Chamberlin calculates the damages for each Plaintiff as follows:

---

[4] The Court notes that in *Gibson v. Cowboys Saloon Gainesville, LLC*, 1:18-cv-138-AW-GRJ, Chief Judge Walker set the motion for default judgment for an evidentiary hearing on jurisdiction and damages. However, more recently, in *Souza*, which also involved an expert report from Chamberlin, damages were awarded without an evidentiary hearing.

(1) Paola Canas – $15,000 for Defendant's use of Canas' image to advertise its "Babes Show Club" and $15,000 for Defendant's use of Canas' image on social media posts. The images were posted for 4 years from October 12, 2017, to August 4, 2021. Thus, the fair market value of Defendant's use of Canas' images is $120,000 ($30,000/year x 4). ECF Doc. 32-1 at 40.

(2) Lina Posada - $15,000 for Defendant's use of Posada's image to advertise its "Babes Show Club" and $15,000 for Defendant's use of Posada's image on social media posts. The images were posted for 4 years from October 12, 2017 to August 4, 2021. Thus, the fair market value of Defendant's use of Posada's images is $120,000 ($30,000/year x 4). ECF Doc. 32-1 at 53.

(3) Keeley Hazell - $20,000 for Defendant's use of Hazell's image to advertise its "Babes Show Club" and $20,000 for Defendant's use of Hazell's image on social media posts. The images were posted for 2 years from October 12, 2019 to August 4, 2021. Thus, the fair market value of Defendant's use of Hazell's images is $80,000 ($40,000/year x 2). ECF Doc. 32-1 at 70.

(4) Dessie Mitcheson - $20,000 for Defendant's use of Mitcheson's image to advertise its business and $20,000 for Defendant's use of Mitcheson's image on Defendant's social media pages. The images were posted from October 29, 2021, to November 2, 2021. Thus, the fair market value of Defendant's use of Mitcheson's images is $40,000 ($40,000/year x 1 year). ECF Doc. 32-1 at 85; ECF Doc. 35-1.

Based on those calculations, the undersigned finds Plaintiffs are entitled to statutory damages under the Lanham Act of $360,000.00.

**D. Costs**

Plaintiffs also seek to recover costs in the amount of $447, consisting of the filing fee and their cost of service. *See* Khomiak Decl., ECF Doc. 32-1 at 7. The Lanham Act specifically allows plaintiffs to recover "the costs of the action" upon establishing a violation under section 1125(a). 15 U.S.C. § 1117(a). Additionally, Rule 54 of the Federal Rules of Civil Procedure also permits the courts to award costs to the "prevailing party." Fed. R. Civ. P. 54(d)(1). The undersigned, thus, finds Plaintiffs are entitled to their costs. *See* 28 U.S.C. § 1920 (listing the specific costs permitted by Congress); *see also Souza*, 2020 WL 13420543, at *7 (granting plaintiffs' motion for default judgment and awarding all costs).

However, under this Court's local rules, a party seeking taxation of costs must file a verified bill of costs on a form available from the clerk within fourteen days of the date of judgment. N.D. Fla. Loc. R. 54.2(A). Unless directed otherwise, the clerk will review and take appropriate action on the bill of costs. N.D. Fla. Loc. R. 54.2(B). Thus, Plaintiffs should file a bill of costs pursuant to the Local Rules after the clerk enters final judgment.

### E. Florida Rule of Civil Procedure Form 1.977

Finally, Plaintiffs ask the Court to enter an order requiring Defendant to complete Florida Rules of Civil Procedure Form 1.977(b), Fact Information Sheet, including all required attachments, within forty-five (45) days of the Court entering a final judgment in this case. Plaintiffs' request should be granted. *See* Fla. R. Civ. P. 1.560(b) ("[T]he court, at the request of the judgment creditor, shall order the judgment debtor or debtors to complete form 1.977, including all required attachments, within 45 days of the order or such other reasonable time as determined by the court."); *see also Souza*, 2020 WL 13420543, at *8 (finding plaintiffs have "the choice of federal or state discovery procedures to conduct post-judgment discovery" and granting the same relief).

Accordingly, it is respectfully **RECOMMENDED** that:

1. Plaintiffs' motion for default judgment, ECF No. 32, be **GRANTED**.

2. The clerk be directed to enter final judgment in favor of Plaintiffs for statutory damages of $360,000.00 and against Babe's South Inc. as follows:

    a. A judgment in favor of Paola Canas for $120,000 and against Babe's South Inc.

    b. A judgment in favor of Lina Posada for $120,000 and against Babe's South Inc.

      c. A judgment in favor of Keeley Hazell for $80,000 and against Babes South Inc., and

      d. A judgment in favor of Dessie Mitcheson for $40,000 and against Babes South Inc.

3. The Plaintiffs be ordered to serve a copy of the Florida Rules of Civil Procedure Form 1.977 Fact Information Sheet along with the Court's Order adopting this Report and Recommendation on Defendant within ten (10) days of the Court's Order and Defendant be ORDERED to complete and serve Form 1.977, including all required attachments on Plaintiffs' attorney within 45 days of being served, pursuant to Fla. R. Civ. P. 1.560.

4. Plaintiffs shall file a bill of costs consistent with this Court's Local Rules after the clerk's entry of a final judgment.

At Pensacola, Florida, this 22nd day of February, 2023.

                              /s/ Hope Thai Cannon
                              **HOPE THAI CANNON**
                              **UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within **fourteen (14) days** of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  An objecting party must serve a copy of its objections upon all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1.